IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORTHWESTERN MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 9201 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| VIRTUAL IMAGING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Northwestern Memorial Hospital ("NMH") brings the instant suit against Defendant Virtual Imaging, Inc. ("Virtual") arising out of NMH's purchase of three RadPRO mobile x-ray units from Virtual in September 2010. NMH alleges that the x-ray units were non-conforming and failed to perform as warranted. NMH therefore seeks to rescind the contract of sale or, in the alternative, recover damages for alleged breaches of express and implied warranties. Virtual removed the action to this Court from the Circuit Court of Cook County, Illinois, and now moves to dismiss NMH's Complaint in its entirety. As set forth below, the Court denies Virtual's motion.

**Facts**

The facts alleged in NMH's Complaint are taken as true for the purposes of deciding this motion to dismiss. *EEOC v. United Airlines, Inc.*, 693 F.3d 760, 762 (7th Cir. 2012) (internal citations and quotations omitted).

NMH purchased three RadPRO mobile x-ray units from Virtual Imaging in September 2010. (Compl. ¶ 1.) Before NMH committed to purchase the x-ray units, Virtual demonstrated a sample unit to NMH and made certain representations regarding the units' capabilities. (*Id.* ¶¶ 2,

19.) Virtual also warranted that the x-ray units would meet NMH's needs, which, most significantly, would allow NMH personnel to x-ray patients with limited mobility and transmit those images wirelessly onto NMH's computer network. (*Id.*)

As part of the Purchase Agreement, executed in September 2010, Virtual provided an express warranty that the x-ray units would conform to the specifications and descriptions provided. (*Id.* ¶¶ 3, 23.) Once the x-ray units were delivered and installed at NMH in October 2010, however, NMH found that the x-ray units failed to perform as warranted. (*Id.* ¶¶ 4, 24.) Specifically, the x-ray units did not connect to NMH's wireless network in order to transfer the x-ray images wirelessly. (*Id.* ¶ 25.) Moreover, the software that operated the x-ray units frequently froze and lost x-ray images, and the battery capacity was so low that x-ray technicians were only able to take a few images at a time. (*Id.* ¶¶ 26-28.)

NMH contends that it informed Virtual of the defects it identified, but despite numerous attempts to remedy the problems, Virtual ultimately was unable to repair the units to perform as Virtual had represented. (*Id.* ¶¶ 5, 29-33.) Under the Terms and Conditions in the Purchase Agreement, NMH contends that it had the option to demand that Virtual repair or replace the units or credit back NMH's purchase price. (*Id.* ¶¶ 6, 34.) However, when NMH requested that Virtual retrieve the x-ray units and credit NMH its purchase price, Virtual refused. (*Id.* ¶¶ 7, 35.) The instant lawsuit resulted.

## Discussion

### I. Standard of Review

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone,* 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short

and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept [ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Id.*

However, a complaint must also allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II. Rescission (Count I)

Virtual attacks NMH's rescission claim on three grounds. First, Virtual argues that NMH may not seek rescission of the Purchase Agreement as a matter of law, because NMH waived its right to seek rescission by not doing so for two years after discovering the alleged defects. Second, Virtual contends that NMH's claim is barred because it elected to pursue contractual remedies rather than seek rescission. Third, Virtual argues that rescission is precluded as a matter of law because the remedy of rescission would not restore the status quo. These arguments are not well-taken for a number of reasons.

As a threshold matter, the Court applies Illinois substantive law to NMH's rescission claim pursuant to the express choice of law clause in the Purchase Agreement. In Illinois, a party states a claim for rescission where "it alleges: (1) substantial nonperformance or breach by the defendant; and (2) that the parties can be restored to the *status quo ante.*" *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E.2d 934, 942 (Ill. App. Ct. 2010). The Court finds

that NMH properly has alleged these elements in its Complaint, and Defendant's motion to dismiss is denied with respect to the rescission claim.

In its attack of NMH's rescission claim, Virtual's primary argument is that NMH has waived its right to request rescission by its actions. But the issue of waiver raises questions of fact that are inappropriate for resolution as part of a motion to dismiss. *See Tantillo v. Janus*, 408 N.E.2d 1000, 1004 (Ill. App. Ct. 1980) (whether a party waives a contractual provision is a question of fact). Indeed, NMH expressly alleges that it attempted to work with Virtual to repair the machines in an effort to find a solution short of rescission, but Virtual was unable to do so. This leaves open the question of whether the parties' efforts to resolve their dispute equitably tolled the time for NMH to seek rescission. *See Am. Sanitary Rag Co. v. U.S. Hoffman Mach. Corp.*, 51 N.E.2d 809, 560-61 (Ill. App. Ct. 1943) ("where the delay in giving notice of rescission, or in conveying the intent to the seller is caused or induced by the seller, this fact is to be considered by the jury in determining the reasonableness of such notice."). The cases upon which Virtual relies are factually or procedurally distinguishable. *See*, *generally*, *Lichter v. Goss*, 232 F.2d 715 (7th Cir. 1956) (appeal from final judgment); *Swartz v. Schaub*, 826 F. Supp. 274 (N.D. Ill. 1993) (rescission based on fraud); *Guy v. Duff & Phelps, Inc.*, 628 F. Supp. 252 (N.D. Ill. 1985) (rescission under Securities Act of 1934); *Kanter v. Ksander*, 176 N.E. 289 (Ill. 1931) (on appeal after final judgment).[1] Virtual has failed to cite any authority compelling the dismissal of a rescission count based upon a theory of waiver at the pleading stage.

Virtual's second argument likewise is unavailing. Virtual contends that NMH is barred from seeking rescission because it initially opted to proceed under a different contractual

---

[1] Similarly, the arguments against rescission raised in *Conner v. Borland-Grannis Co.*, 128 N.E. 317 (Ill. 1920), *Mollihan v. Stephany*, 340 N.E.2d 627 (Ill. App. Ct. 1975), *Brule C.E.&E., Inc. v. Pronto Foods Corp.*, 278 N.E.2d 477 (Ill. App. Ct. 1971), *Olson Rug Co. v. Smarto*, 204 N.E.2d 838 (Ill. App. Ct. 1965), and *Achilli v. Alongi*, 104 N.E.2d 645 (Ill. App. Ct. 1952), were all on appeal after the trial court had entered a final judgment.

remedy. But, again, the cases cited by Virtual analyze the propriety of rescission claims at the summary judgment or directed verdict stage, rather than at the motion to dismiss stage. *See, generally, id.*; *see also Zeidler v. A&W Rests., Inc.*, No. 99 C 2591, 2001 WL 62571, at *7 (N.D. Ill. Jan. 25, 2001) (summary judgment); *White Brass Castings Co. v. Union Metal Mfg. Co.*, 135 Ill. App. 32 (Ill. App. Ct. 1907) (appeal from final judgment). Furthermore, NMH is entitled at this stage of the litigation to plead in the alternative. *See Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1371 (7th Cir. 1990) ("it would be unreasonable to make [plaintiff] choose between the two forms of damages before trial and verdict."). Lastly, as NMH points out, "[t]he election of remedies doctrine applies in cases of alternative pleading only where the opposing party has substantially altered his position in reliance on the plaintiff's choice." *Giornda v. Paulsen*, 605 N.E.2d 1089, 1091 (Ill. App. Ct. 1992) (rejecting election of remedies argument asserted as part of motion for judgment on pleadings). Virtual has not demonstrated that it has suffered any prejudice as a result of the manner in which NMH has pleaded its claims.

Virtual's third argument, that NMH cannot seek rescission because there is no way to return the parties to the *status quo ante*, also fails. As the Illinois Appellate Court explained in *Puskar v. Hughes*, 533 N.E.2d 962, 967 (Ill. App. Ct. 1989), "[r]estoration of the status quo initially requires return of any property or other consideration that has passed to the rescinding party under the contract and also generally requires the rescinding party to account for any benefits received from the other party under the contract." (Citations omitted.) "Where rescission is awarded then, the proper measure of recovery is restitution of the consideration *and other benefits* received by the parties under the contract." *Id.* (emphasis added) (citing *Finke v. Woodard*, 462 N.E.2d 13, 19 (Ill. App. Ct. 1984)). Here, NMH expressly pleads that it is seeking to return the units to Virtual and obtain a credit for the amount paid. And, while it is true that

NMH may have obtained some benefit from the use of the x-ray machines for a period of time, to the extent that NMH ultimately prevails on its rescission claim, it is within the Court's equitable powers to adjust the amount of any credit to NMH's account for this usage. *See Facility Wizard Software, Inc. v. Se. Tech. Servs., LLC*, 647 F. Supp. 2d 938, 948 (N.D. Ill. 2009) (holding that "remedies such as restitution and compensatory damages" can be used to return parties to the *status quo ante*, and even if not, "[t]he inability to return the parties to their pre-contract positions . . . is not necessarily a bar to a claim for rescission."). "[N]othing more is required at the pleading stage" than for MMH to allege that restitution is possible and how it can be accomplished. *Horwitz*, 926 N.E.2d at 943. As a result, the Court declines to dismiss NMH's rescission claim at this time.

## III.  Breach of Express Warranty (Count II)

Virtual attacks NMH's claim for breach of express warranty on two grounds. First, Virtual argues that NMH has failed to comply with the express warranty provision in the contract, requiring this claim to be dismissed with prejudice. Second, Virtual contends that because the claim is premised partly upon pre-contractual oral representations, the claim is superseded by the integration clause in the agreement. Neither theory is supportable.

In order to state a claim for breach of an express warranty under Illinois law, a party must plead that the seller made an affirmation of fact that formed part of the basis of the bargain between the parties. *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.,* 865 N.E.2d 334, 340 (Ill. App. Ct. 2007). "Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties." *Id.* (citation omitted). Here, NMH alleges that Virtual "expressly warranted that the RadPRO x-ray units would conform to the specifications and descriptions in the contract and perform as stated

in Paragraphs 15 and 16." (Compl. ¶ 55.) NMH further alleges that Virtual's demonstration of the sample x-ray unit "was part of the basis of the bargain, creating an express warranty as to the features and performance of the unit described in Paragraph 20." (*Id.* ¶ 56.) The Court finds that these allegations on their face are sufficient to state a claim for breach of express warranty.

The fact that these representations may have been made orally does not doom NMH's claim. Indeed, the language in the warranty provision expressly binds Virtual to oral express warranties made to NMH about the equipment in question.

> **14. Warranties.**
>
> ***
>
> **C. Goods.** Seller represents and warrants that all good delivered shall be merchantable and/or fit for the purposes for which such goods are intended or ordinarily employed. Further, Seller warrants that all goods delivered shall be free from defects in materials and workmanship and shall conform to all applicable specifications, drawings, and other descriptions for a period of three (3) years from the date of delivery to Buyer or for the period provided in Seller's standard warranty covering the goods, whichever is longer. *Additionally, goods purchased shall be subject to all written and oral express warranties made by Seller's agents, and to all warranties provided by law.* All warranties shall be construed as conditions as well as warranties and shall not be exclusive. Seller shall furnish to Buyer Seller's standard warranty and service warranty applicable to the goods.

(Compl., Ex. 1 ("Terms and Conditions") at ¶ 14) (emphasis added).

Virtual also argues that NMH has pleaded itself out of court by failing to comply with the "Returns" portion of the warranty provision. Under that provision, NMH was to notify Virtual of any problems and return the x-ray units. NMH would then have had the option to have Virtual either repair or replace the machines, or receive a credit.

7

> **D. Returns.** If Buyer identifies a warranty problem with the goods during the warranty period, Buyer will promptly notify Seller of such problems and will return the goods to Seller, at Seller's expense. Within fifteen (15) business days of Seller's receipt of the returned goods, Seller shall, at Buyer's option, either repair or replace such goods, or credit Buyer's account for the same. Replacement and repaired goods shall be warranted for the remainder of the warranty period or three (3) months, whichever is longer.

(*Id.*)

For its part, NMH replies that, as alleged in the complaint, it sought to return the x-ray units, but Virtual refused to accept them. (Compl. ¶¶ 50, 61-62, 71.) Assuming (as we must) these allegations are true, Virtual cannot thwart NMH from complying with the terms of the Returns provision only to later insist on that same compliance. *See Swaback v. Am. Info. Tech. Corp.*, 103 F.3d 535, 542-43 (7th Cir. 1996) (citing Restatement (Second) of Contracts § 225, cmt. b (1981)). Moreover, as discussed above, NMH has alleged that it spent significant time working with Virtual in an effort to resolve the problems with the units before deciding to return the equipment when those efforts failed. (*Id.* ¶¶ 29-33.) Given these allegations, NMH has not pleaded itself out of court as to its breach of express warranty claim.

Virtual's invocation of the integration clause likewise is unfounded. The integration clause states: "This Purchase Agreement and its exhibits [including the Purchase Order Terms and Conditions] constitute the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior written representations and agreements between the parties." (Dkt. 1-1 at ¶ 6.) Virtual argues that the provision bars any *oral* representations made by NMH. But the plain language of the provision only bars reliance upon written, as opposed to oral, representations. The Court further notes that Section 14C of the Terms and Conditions expressly provides that "goods purchased shall be subject to all written and oral express warranties made

by Seller's agents, and to all warranties provided by law." (Compl., Ex. 1 at ¶ 14.) Although these two provisions arguably may treat written representations differently, there is no conflict as to the binding effect of oral express warranties.[2] For all of these reasons, the Court declines to dismiss Count II.

## IV. Breach of Implied Warranty (Count III)

NMH's claim for breach of implied warranty (Count III) also survives Virtual's motion. In support, Virtual argues that NMH had a right to inspect the x-ray units, during which time NMH either could have or should have discovered any defects in the units. According to Virtual, this right to inspect precludes a claim for implied warranty. However, as NMH points out, if the defects in a product are latent, the examination would not bar a claim for implied warranty. Of course, whether the purported defects actually were latent may be a subject of dispute, but it is a factual one that cannot be resolved at this point in the litigation. *See Canadian Pac. Ry. Co. v. Williams-Hayward Prot. Coatings, Inc.*, No. 02-C-8800, 2005 WL 782698, at *14 (N.D. Ill. Apr. 6, 2005) (denying summary judgment because factual question existed as to whether defects "obvious upon mere examination.").

Along similar lines, Virtual contends that, because NMH had an opportunity to inspect the equipment upon delivery and failed to notify Virtual of any defects, NMH is "deemed to have clinically accepted the goods upon the third consecutive day of clinical use of the goods." (Compl., Ex. 1 at ¶ 8.) But, the same provision also states that NMH's inspection "shall not

---

[2] Virtual also argues that the warranty provision in paragraph 14.D of the Purchase Agreement Terms and Conditions limits NMH to a credit on its account as its sole remedy for any breach, precluding an award of monetary damages. Presumably, Virtual wishes the Court to limit the amount of damages NMH may seek in connection with this action. However, the Court agrees with NMH that it is premature to construe paragraph 14.D on a motion to dismiss. *See Kemper Prime Indus. Partners v. Montgomery Watson Ams., Inc.*, No. 97-C-4278, 2000 WL 876222, at **8-9 (N.D. Ill. Jun. 26, 2000) (arguments requiring Court to construe contract not properly the subject of Rule 12(b)(6) motion).

9

constitute acceptance of any goods *if the defective condition of such goods could not be determined by reasonable inspection.*" (*Id.*) (Emphasis added.) Moreover, the units were delivered in October 2010, and NMH specifically alleges that it provided notice to Virtual of the defects in October 2010. (Compl. ¶ 69.) Whether this notice was provided within the first three days of clinical use is unclear, but all reasonable inferences must be made in favor of NMH at this stage, *see Tamayo,* 526 F.3d at 1081, and these inferences preclude dismissal of the claim. Virtual also cites to 810 Ill. Comp. Stat. 5/2-316(3)(b), but this provision forecloses a claim for implied warranty only "with regard to defects *which an examination ought in the circumstances to have revealed to him . . . .*" (Emphasis added.) Again, such factual issues are not appropriately addressed at the motion to dismiss stage.

Finally, Virtual argues in its reply brief that, because NMH has alleged that the equipment was deficient from the outset, the Court need not "determine whether the examination was sufficient to reveal the alleged defects." (Reply 5.) As a threshold matter, because this argument was raised for the first time on reply, it is waived. *See Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012). But the argument also is unpersuasive in substance. As noted, NMH is only deemed to have accepted the equipment if it failed to notify Virtual of the defects before three days of clinical use. NMH alleges that it provided this notice to Virtual in October 2010 when the units were delivered. These allegations are sufficient to withstand a motion to dismiss.

## Conclusion

For the reasons discussed above, Defendant Virtual Imaging, Inc.'s Motion to Dismiss Plaintiff Northwestern Memorial Hospital's Complaint [dkt. 11] is denied.

Dated: December 5, 2013

John Z. Lee
U.S. District Court Judge